UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
ABDUL KARIM HASSAN,

                Plaintiff,

- against -

THE UNITED STATES OF AMERICA,

                Defendant.

-----------------------------------------------------------x

**MEMORANDUM AND ORDER**

08-CV-0938 (NG)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JUN 15 2010 ★
BROOKLYN OFFICE

**GERSHON, United States District Judge:**

Abdul Karim Hassan, a naturalized citizen of the United States and a *pro se* lawyer in this action, asserts that he intends to run for President of the United States in 2012. Article II, Section 1, clause 5, of the United States Constitution, which provides that "[n]o Person except a natural born Citizen, or a Citizen of the United States, at the time of the Adoption of this Constitution, shall be eligible to the Office of President," stands in the way. Hassan concedes that, as a naturalized citizen, he is not a "natural born citizen" as that language has been interpreted. However, he argues that the First, Fifth, Fourteenth and Fifteenth Amendments "trump[]" the natural-born citizen requirement, and he seeks a declaratory judgment to that effect. Defendant the United States of America moves to dismiss the complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), arguing (1) that Hassan's claim does not meet Article III's "case or controversy" requirement; and (2) that Hassan's arguments fail on the merits. Hassan moves for summary judgment. In essence, he seeks a declaratory judgment that he is eligible to run for President, and, if elected, to serve.

## DISCUSSION

I.     <u>Ripeness and Standing</u>

The government, which does not seriously dispute Hassan's contention that he intends to run for President, nevertheless argues that the steps Hassan has taken toward his campaign — which consist primarily of securing internet domain names — are too minimal to support Article III standing or ripeness. In the years between the complaint and the time when Hassan may be refused the Presidency, the government contends, "any number of intervening events will likely render the dispute moot." For example, Hassan may change his mind, lose in a primary or lose the general election. Given the range of potential outcomes, the government suggests that Hassan could bring suit under Article III only *after* he was elected when he was denied the office of Presidency.

What the government overlooks is that Hassan's alleged injury is not contingent on the outcome of the election; his injury is the denial of his right to run for election with his own knowledge and that of voters that he is eligible to *serve* as President of the United States. His ability to run for election is significantly compromised if he cannot take office.[1] Given Hassan's intention to run, his alleged injury caused by the Natural Born Citizen Clause is sufficiently "concrete and particularized" and "actual or imminent" to support Article III standing in this case. *See Int'l Action Ctr. v. City of N.Y.*, 587 F.3d 521, 529 (2d Cir. 2009).

As for ripeness, the contention that Hassan is required to wait until he won the election to bring suit under Article III is an overly broad reading of the ripeness requirement. In *Signorelli v. Evans*, 637 F.2d 853 (2d Cir. 1980), the Second Circuit concluded that a judge in New York state court could challenge as unconstitutional three New York provisions that effectively required a judge to resign from his position if he sought political office, even though the plaintiff

---

[1] The government argues that Hassan is technically not prevented from *running* for office; he is merely prevented from taking office if elected in 2004. It notes, as an example, that Róger Calero, a non-citizen, ran for President as a representative of the Socialist Workers Party, even though he could not have taken office had he won. That Calero chose to do so, however, does not determine whether the plaintiff in this case has suffered an injury.

2

had taken not yet taken steps toward his candidacy. Although the plaintiff in *Signorelli* faced sanctions if he ran for office and tested the scope of the provisions—sanctions that Hassan admittedly does not face—factors the Circuit found to support ripeness in that case also apply here. As in *Signorelli*, Hassan would "ha[ve] to make decisions in the immediate future that would be affected by the outcome of the lawsuit"; "the factual record would not be more fully developed at the later point"; and there is "no better time to determine the provision's constitutionality and minimize irreparable injury." *Id.* at 857 (citing *Blanchette v. Conn. Gen. Ins. Co.*, 419 U.S. 102 (1974)). And as explained above, Hassan's injury is one that he faces now, regardless of the outcome of the election. Therefore, the court finds his claims are ripe for review.

    II.    <u>Merits</u>

Article II, section I, clause 5, of the Constitution provides that:

> No person except a natural born Citizen, or a Citizen of the United States, at the time of the Adoption of this Constitution, shall be eligible to the Office of President; neither shall any Person be eligible to that Office who shall not have attained to the Age of thirty-five Years, and been fourteen Years a Resident within the United States.

With the exception of the Natural Born Citizen Clause, Hassan meets all of the other eligibility requirements for the office.[2] He makes several arguments in support of his claim that being a natural born citizen is no longer a constitutional requirement for the Presidency. Specifically, he argues that subsequent amendments to the Constitution—namely, the First, Fifth, Fourteenth, and Fifteenth Amendments—"implicitly" repealed the Natural Born Citizen Clause.

Likely because of the rarity of such challenges, the Supreme Court has not established a test for determining whether or when one constitutional provision "trumps," as plaintiff argues,

---

[2] Hassan is now thirty-five years old, and he has been a resident of the United States for more than fourteen years.

3

another. The Court has, however, on numerous occasions considered whether a *statute* has implicitly repealed another statute. "While a later enacted statute . . . can sometimes operate to amend or even repeal an earlier statutory provision," the Court has held, "repeals by implication are not favored and will not be presumed unless the intention of the legislature to repeal is clear and manifest." *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 662 (2007) (internal quotation marks and alterations omitted). Because implicit repeals are so highly disfavored, the Court "will not infer a statutory repeal unless the later statute expressly contradicts the original act or unless such a construction is absolutely necessary in order that the words of the later statute shall have any meaning at all." *Id.* (internal quotation marks and alterations omitted).

As the parties acknowledge, this approach to statutes could, in theory, apply to the Constitution. For example, the Supreme Court held that the Fourteenth Amendment partially abrogated Eleventh Amendment sovereign immunity, even though the text of the Fourteenth Amendment does not explicitly require that result. *See Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976) ("[W]e think that the Eleventh Amendment, and the principle of state sovereignty which it embodies . . . are necessarily limited by the enforcement provisions of section 5 of the Fourteenth Amendment.") (citation omitted). The already rigorous test for implied repeal of a statute would be even more so in the constitutional context.[3]

---

[3] Other courts have taken a different approach. In *New v. Pelosi*, 2008 WL 4755414 at * 2 (S.D.N.Y. 2008), the court rejected a plaintiff's argument that the Fourteenth Amendment implicitly overruled the electoral college, because "as interpreter and enforcer of the words of the Constitution, [the court] is not empowered to strike the document's text on the basis that it is offensive to itself or is in some way internally inconsistent. In other words, the electoral college cannot be questioned constitutionally because it is established by the Constitution." (internal quotation marks omitted). *See also New v. Ashcroft*, 293 F. Supp. 2d 256, 259 (E.D.N.Y. 2003) (citing *Trinsey v. United States,* No. 00-5700, 2000 WL 1871697 at *3 (E.D.Pa. 2000)); *Hitson v. Baggett*, 446 F. Supp. 674, 676 (M.D. Ala. 1978) ("The discrimination of which plaintiffs complain (if it is discrimination) is . . . a type of 'discrimination' specifically sanctioned by the

But even assuming that a constitutional provision can, like a statute, be implicitly repealed, none of the amendments to the Constitution here implicitly repealed the Natural Born Citizen Clause. "[A] statute dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute covering a more generalized spectrum." *Nat'l Ass'n of Home Builders*, 551 U.S. at 663 (quoting *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153 (1978)). Particularly given the disfavor of implicit repeal in the *statutory* context, this court cannot imply intent to overturn a specific *constitutional* provision based only on generalized principles plaintiff draws from the First, Fifth, Fourteenth, and Fifteenth Amendments.

Hassan's argument that the First Amendment overrides the Natural Born Citizen Clause, for example, is easily dismissed. The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." As an initial matter, the Natural Born Citizen Clause is not a "law" passed by Congress, but a constitutional provision. Even putting this difficulty aside, Hassan has not described any First Amendment rights that are "irreconcilable" with the Natural Born Citizen Clause. The First Amendment does not address the right to run for President, much less create a right for all citizens to be able to run for President. And Hassan has offered no indication that the First Amendment was intended to overrule the Natural Born Citizen Clause, particularly given the short period of time between the passage of the Constitution and the enactment of the Bill of Rights.

---

Constitution. Thus, while this 'discrimination' may be considered by some to be unfair, it is hardly 'unconstitutional.'") (citations omitted).

5

Nor do the equal protection mandates of the Fifth and Fourteenth Amendments implicitly repeal the Natural Born Citizen Clause.[4] The Equal Protection Clause, Hassan argues, removed all distinctions between natural born and naturalized citizens and thus impliedly repealed the natural born citizen requirement. Hassan relies on *Schneider v. Rusk*, 377 U.S. 163 (1964), where the Supreme Court struck down a statute that denaturalized naturalized citizens who had resided three continuous years in the country of their birth after becoming American citizens. The Court, in considering whether the statute unconstitutionally discriminated against naturalized citizens, "start[ed] from the premise that the rights of citizenship of the native born and the naturalized person are of the same dignity and are co-extensive." *Id.* at 165.

But *Schneider* hardly provides the emphatic proof Hassan would need to overcome the strong presumption against implicit repeal. On the contrary, in *Schneider* itself, the Court recognized that "[t]he only difference drawn by the Constitution is that only the 'natural born' citizen is eligible to be President," not indicating any conflict between the provision and the Court's holding. *Id.* Other cases have acknowledged the constitutional distinction among citizens. *See Knauer v. United States*, 328 U.S. 654, 658 (1946) (naturalized citizenship "carries with it all of the rights and prerogatives of citizenship obtained by birth in this country, save that of eligibility to the Presidency") (internal quotation marks omitted); *Baumgartner v. United States*, 322 U.S. 665, 673 (1944) ("Under our Constitution, a naturalized citizen stands on equal footing with the native citizen in all respects save that of eligibility to the Presidency.") (quoting *Luria v. United States*, 231 U.S. 9, 22 (1913)).

---

[4] Although the Fifth Amendment, which applies to the federal government, does not have an equal protection clause, it has been interpreted as including the same principle. *See Bolling v. Sharpe*, 347 U.S. 497, 500 (1954) ("In view of our decision that the Constitution prohibits the states from maintaining racially segregated public schools, it would be unthinkable that the same Constitution would impose a lesser duty on the Federal Government.").

The same is true of the Fifteenth Amendment, which provides, in part, that "[t]he right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of race, color, or previous condition of servitude." Hassan argues that the Fifteenth Amendment encompasses the right to be voted for. But whether or not it does, the language of the Fifteenth Amendment itself does not "irreconcilably" conflict with the language of the Natural Born Citizen Clause. The Fifteenth Amendment simply cannot be interpreted to overrule the Natural Born Citizen Clause.

## CONCLUSION

For the above reasons, defendant's motion to dismiss is GRANTED and plaintiff's motion for summary judgment is DENIED. The Clerk of Clerk is directed to close this case.

SO ORDERED.

_____
Nina Gershon, U.S.D.J.

Dated: June 11, 2010
Brooklyn, NY